KAREN B. GHASSEMIEH ET AL. *v.* ELAINE SCHAFER

[No. 763, September Term, 1981.]

*Decided July 8, 1982.*

The cause was argued before THOMPSON, MOORE and MacDANIEL, JJ.

*Albert McComas,* with whom were *R. Roger Drechsler* and *Lord, Whip, Coughlan & Green, P.A.* on the brief, for appellants.

*J. Thomas Caskey,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this case, a 13-year-old girl in eighth grade pulled a chair away from her teacher who fell to the floor, hurting her back. Approximately one month less than three years later, the teacher filed a negligence action against her former pupil in the Circuit Court for Baltimore County (Sfekas, J.).[1] From a judgment for the defendant, this appeal is taken. For the reasons stated herein, we shall affirm.

## I

The appellant, Karen B. Ghassemieh, age 29 on February 24, 1977, was a teacher of art with the Baltimore County Schools, assigned to Old Court Junior High. On that date, she was teaching an 8th grade class of "above average" students, including the appellee, Elaine Schafer, then 13. While the teacher was about to sit down to assist another student, Elaine pulled the chair away. At trial the teacher described what happened:

> "I got to Terri's seat and because I am very tall it is my practice either to kneel down next to the children or to sit down. Terrie got up very quickly and

---

[1]. The teacher sued in the first count to her own use and to the use of the School Board's Workmen's Compensation insurer, United Pacific Insurance Company. The second count alleged a cause of action of her husband's for household expenses. The third count alleged a cause of action of the teacher and her husband under *Deems v. Western Maryland Railroad Co.,* 247 Md. 95, 231 A.2d 514 (1967).

I went to sit in her seat. As I went to sit down, I tucked the chair underneath me as I usually do. As I relaxed to sit down, the chair was gone. It was pulled out and I fell to the floor hurting my back."

Elaine Schafer testified that she pulled the chair away "as a joke." She further testified on direct examination:

"Q. When you pulled the chair, was there any doubt in your mind that she would miss the chair and fall to the floor?

A. I knew she was going to fall to the floor.

Q. Was that your intent?

A. Yes."

On cross-examination she repeated that, "I did it as a joke." She also said that she did not intend any injury. Thus:

"Q. You mean you did not intend to have any harm done to her, is that right?

A. I intended for her to fall to the floor, not for her to be injured."

The declaration was not filed until January 24, 1980, although in answers to interrogatories, Mrs. Ghassemieh said she was treated for back problems throughout 1977 and 1978.[2] Count One alleged that the defendant "carelessly and negligently" moved the chair; Count Two, the claim of the teacher's husband, incorporated "all the allegations of negligence and want of due care as referred to in Count One hereof," and alleged that the husband had been caused to incur expenses and losses by "the carelessness, recklessness and negligence on the part of the defendant. . . ." Count Three also incorporated "all the allegations of negligence and want of due care as referred to in Count One hereof," and

---

2. This action was brought almost three years after the incident. However, appellant began experiencing back pain in March 1977, a month or so later; she had a myelogram then and again in early 1978. In September 1978, she had a spinal fusion. We observe that appellee did not plead the one-year statute of limitations, Md. Cts. & Jud. Proc. Code Ann., § 5-105 (1980 Repl. Vol.), governing battery, but she had no occasion to do so in light of the allegations in the declaration.

alleged that "as a direct result of the carelessness, recklessness and negligence of the Defendant, Elaine Schafer, as more fully set out in Count One hereof," the plaintiffs had suffered injury to their marital relationship.

The trial was bifurcated, on motion of the defendant. At the close of the evidence, each side moved for a directed verdict. The appellants' (plaintiffs') motion was based on two grounds: (a) the defendant was shown to be negligent as a matter of law and (b) there was no evidence that the plaintiff, Karen Ghassemieh, was contributorily negligent. The appellee's (defendant's) motion was predicated on a claim that the evidence established a battery, an intentional tort, and not negligence, as alleged.

Both motions were denied. With respect to the defendant's motion, the court ruled:

> "As to the motion of the defendant, the Court will deny that motion, but I will include in the instructions the definition of a battery and let the jury make the determination whether this in fact was, if it was a negligent act on the part of the defendant or if in fact it was a battery, which would certainly not be encompassed in the action brought by the plaintiff in this case, but I would allow that to go to the jury by way of instruction."

Before the judge instructed the jury, the following exchange occurred:

> "MR. CASKEY (counsel for defendant/appellee): I would move that the Court present the question to the jury as a question as to the battery versus negligence issue. I would request that the jury be given the instructions as to what constitutes negligence and as to what constitutes battery and to have them answer the question — do you find that it was negligence, battery, or neither?
>
> MR. HUESMAN (counsel for plaintiff/appellant): Well, I think, Your Honor, before I respond to that,

I guess a lot would depend on exactly the way the questions are phrased."

In the instructions which immediately followed, the court began by saying: "The case before you is an action based on a claim of negligence." Thereafter, negligence was defined in general terms and an instruction was given on contributory negligence, characterized by the court as an "affirmative defense" asserted by the defendant. The court then instructed on battery, as follows:

"The Court has indicated that this is an action in negligence. *A battery is an intentional touching which is harmful or offensive.* Touching includes the intentional putting into motion of anything which touches another person or the intentional putting into motion of anything which touches something that is connected with or in contact with another person. A touching is harmful if it causes physical pain, injury or illness. A touching is offensive if it offends a person's reasonable sense of personal dignity.

*"If you find that the defendant acted with the intent to cause a harmful or offensive touching of the plaintiff and that that offensive touching directly or indirectly resulted, then this constitutes a battery and your verdict must be for the defendant,* as this suit has been brought in negligence and is not an action in battery." (Emphasis added.)

At the conclusion of the instructions, trial counsel for the plaintiffs (appellants) excepted as follows:

"*Also, we except to that portion of the charge with regard to the definition of battery.* We think under the Maryland law, under the major rule, although we have never been able to find a case in Maryland in that regard, *we do believe that it is essential to commit a battery that it contains some of the elements of assault.* We believe that it is necessary to show that the defendant *actually intended to harm*

*the plaintiff* and we believe on the basis of the defendant's own testimony that she did this as a joke, that she had no intention to commit bodily harm." (Emphasis added.)

The trial court overruled all objections. With respect to the battery objection, the court did not address the definitional point raised, but said:

"The battery instruction, the Court felt was appropriate in view of the fact that this is an action in negligence, and if the jury would find from hearing the testimony in the case that in fact there was a battery and not negligence, it may very well have the opportunity to make a determination in favor of the defendant."

Approximately 25 minutes after the jury retired, the court received a request that the definition of battery be given again. Counsel for the teacher objected. The court stated that, in the absence of agreement of counsel, it would decline to repeat the instruction. One-half hour later, the jury returned a verdict for the defendant.

## II

The gravamen of the plaintiffs' appeal is that the trial court erred in giving the following portion of the instruction on battery quoted above:

"If you find that the defendant acted with the intent to cause a harmful or offensive touching of the plaintiff and that offensive touching directly or indirectly resulted, then this constitutes a battery and your verdict must be for the defendant, as this suit has been brought in negligence and is not an action in battery."

In support of this principal contention, appellants maintain that:

"(1) The mere fact that the evidence adduced

may have established that the defendant acted intentionally in pulling the chair out from under the appellant, Karen B. Ghassemieh, does not preclude recovery of damages for a cause of action in negligence.

(2) Assuming, arguendo, that there was a variance between the allegations of the declaration and the evidence adduced, the variance was immaterial and was waived by the defendant.

(3) To permit the defendant to escape liability for her tortious conduct merely because she acted intentionally, rather than negligently, would be fundamentally unjust and contrary to public policy."

We are confronted with a threshold consideration not raised by the appellee and, therefore, neither briefed nor argued but essentially jurisdictional: Was the appellant's objection to the battery instruction, quoted above, a sufficient predicate for their position on appeal? They now argue:

"The instruction given by the trial judge was improper because if the jury had found that the defendant acted intentionally in pulling the chair out from under the appellant, Karen B. Ghassemieh, it could nevertheless have awarded damages for negligence."

And further:

"Thus, a finding of gross negligence or of willful and wanton misconduct may impute a finding of intentional conduct. Consequently, a finding that the appellee had acted intentionally would have been fully consistent with the allegations of the declaration charging negligence. The trial court, therefore, erred in instructing the jury to the contrary. While it is clear that [appellee] intended to pull the chair out from under Mrs. Ghassemieh, it is equally clear that she did not intend to injure Mrs. Ghassemieh, . . ."

Our problem arises from Maryland Rule 554 (Instructions to the Jury) (1982 ed.), particularly subsections (d) and (e) concerning, respectively, "objection" and "appeal." Subsection (d) provides in part:

"If a party has an objection to any portion of any instruction given, or to any omission therefrom, or the failure to give any instruction, *he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the .ground of his objection.*" (Emphasis added.)

And subsection (e) provides in its entirety:

"Upon appeal a party in assigning error in the instructions, *shall be restricted* to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct *distinctly objected to before the jury retired* and (2) *the grounds of objection distinctly stated at the time,* and *no other errors or assignments of error in the instructions shall be considered by the appellate court.*" (Emphasis added.)

Trial counsel for the plaintiffs did not object, as appellate counsel now objects, to *any* instruction on battery, but only to "that portion of the charge with regard to the *definition* of battery." (Emphasis added.) Trial counsel was objecting to the court's definition of battery as an "intentional touching which is harmful or offensive," contending that a battery includes "some of the elements of assault."

Trial counsel never stated as a basis for his objection that no instruction on battery should be given because this was an action in negligence. The objection at trial was simply that the definition of battery lacked an essential element, *i.e.,* the defendant actually intended to harm the plaintiff. However, intent to do harm is not essential to a battery. The gist of the action is not hostile intent on the part of the defendant, but the absence of consent to the contact on the plaintiff's part. Prosser, *Law of Torts,* § 9 at 36 (4th ed.

1971). Thus, horseplay, pranks, or jokes can be a battery regardless of whether the intent was to harm. *Garratt v. Dailey,* 279 P.2d 1091 (Wash. 1955), *aff'd,* 304 P.2d 681 (1956).[3]

Trial counsel never argued to the trial court that, as contended at oral argument before us, negligence and battery are not mutually exclusive, or that a single intentional act can be the basis for both battery and negligence, or that the jury could award damages for negligence even if a battery had also been proved. Only on appeal do appellants make clear their challenge to the instruction that "this suit has been brought in negligence and is not an action in battery" and if battery were found, "your verdict must be for the defendant." The trial judge was not given to understand that the plaintiff really objected to any instruction on battery. The judge reiterated his negligence versus battery instruction in explaining why he felt the battery instruction was appropriate, and the plaintiff did not object.

Thus, the objection below did not reach the broader issue raised on appeal, and under Rule 554 (e) it "may not be considered by the appellate court." *Fiege v. Boehm,* 210 Md. 352, 364, 123 A.2d 316 (1956). *Cf. Sergeant Co. v. Pickett,* 283 Md. 284, 288 -9, 388 A.2d 543 (1978) (substantial compliance with Rule 554 sufficient to preserve question for appellate review).

## III

Even if appellants' first contention — the mere fact that the defendant acted intentionally does not preclude recovery

---

**3.** In *Lewis v. Woodland,* 140 N.E.2d 322 (Ct.App. Ohio 1955), the defendants were held liable when the plaintiff broke her back after being frightened by a toy rubber lizard placed in her lap. The point was not raised, but the defendants' act of placing the toy in the plaintiff's lap is a technical battery. Liability was found on a theory of negligence. The case held that the perpetrator of a practical joke which is the cause of injury to a person is liable for damages.

of damages for negligence — has merit, we observe that the case was not tried within the familiar framework of negligence: duty, breach, causation, and injury. The plaintiffs failed to develop evidence showing that Elaine Schafer had a duty to refrain from any act which a reasonable person should recognize as involving an unreasonable risk of harm to another. *Restatement (Second) of Torts,* §§ 285, 291, 297 (b) (1965). Duty requires the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks. Prosser, *supra,* § 30 at 143. *See also* § 31 at 145. The essential question is whether the plaintiffs' interests are entitled to legal protection against the defendant's conduct. *Id.,* § 30 at 143.

The defendant here stated several times that she did not mean to harm her teacher, that she meant it as a joke. The defendant was asked: "You knew it was wrong to do this, didn't you?" and "What did you think would happen when she did fall." But the pivotal question was not asked: "Were you aware that a tall adult like Mrs. Ghassemieh could have been severely injured by your conduct?" An affirmative answer would have established her knowledge of the risk involved. A negative answer would have raised a jury question as to whether a reasonable 13-year-old should have known that such a prank constituted an unreasonable risk of harm to another, and thus, she had a duty to refrain from such conduct.

While it is true that ". . . the absence of intent is essential to the legal conception of negligence," *Adams v. Carey,* 172 Md. 173, 186, 190 A. 815 (1937), the presence of an intent to do an act does not preclude negligence. The concepts of negligence and battery are not mutually exclusive. *See* Edgerton, *Negligence, Inadvertence and Indifference; the Relation of Mental States to Negligence,* 39 Harv.L. Rev. 849 (1926).

In understanding the overlap, Prof. Prosser's explication of the distinction between intended and unintended acts is helpful:

"In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable man in his position to anticipate them, and to guard against them. *If an automobile driver runs down a man in the street before him, with the desire to hit him, or with the belief that he is certain to do so, it is an intentional battery; but if he has no such desire or belief, but merely acts unreasonably in failing to guard against a risk which he should appreciate, it is negligence.* As the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself. Such intermediate mental states, based upon a recognizable great probability of harm, may still properly be classed as 'negligence,' but are commonly called 'reckless,' 'wanton,' or even 'wilful.' They are dealt with, in many respects, as if the harm were intended, so that they become in effect a hybrid between intent and negligence, occupying a sort of penumbra between the two." (Emphasis added.)

Prosser, *supra*, § 31 at 145.

The plaintiffs in this case could properly have sought a negligence instruction based on the Restatement of Torts and quoted by Prosser, *id.* at 207, n.12:

"*Every person is negligent when, without intending to do any wrong, he does such an act or omits to take such precaution that under the circumstances he, as an ordinarily prudent person,*

*ought reasonably to foresee that he will thereby
expose the interests of another to an unreasonable
risk of harm.* In determining whether his conduct
will subject the interests of another to an
unreasonable risk of harm, a person is required to
take into account such of the surrounding circum-
stances as would be taken into account by a reason-
ably prudent person and possess such knowledge as
is possessed by an ordinarily reasonable person and
to use such judgment and discretion as is exercised
by persons of reasonable intelligence under the
same or similar circumstances."

We see no reason why an intentional act that produces
unintended consequences cannot be a foundation for a negli-
gence action.[4] Here, an intentional act — the pulling away
of the chair — had two possible consequences: the intended

---

4. Under the Federal Torts Claims Act, 28 U.S.C. § 1346 (b) (1976), the
distinction between negligence and battery is maintained. The Act abro-
gates sovereign immunity by allowing suits for damages against the federal
government only when "caused by the negligent or wrongful act or omission
of any employee of the Government. . . ." Thus, the actions of a federal
employee who screamed "boo" at the plaintiff, pulled his hat over his eyes,
and began to ride him piggyback, were characterized as a battery and
therefore specifically excluded from the Act under § 2680 (h). Lambertson
v. United States, 528 F.2d 441 (2d Cir. 1976). In holding that the plaintiff
could not avoid the intentional tort exclusions of § 2680 by claiming negli-
gence, *id.* at 444, the court stated:

> "We would find it much more pleasant to reach a decision based on
> what we wish Congress had said, rather than what it did say.
> However, to permit plaintiff to recover by 'dressing up the
> substance' of battery in the 'garments' of negligence would be to
> 'judicially admit at the back door that which has been legislatively
> turned away at the front door.' *Id.* at 445, *quoting* Laird v. Nelms,
> 406 U.S. 797, 802 (1972)."

We observe that outside the federal statute and any workmen's com-
pensation statute barring suits between co-employees, an action for negli-
gence may lie if plaintiff could show that the defendant through intentional
horseplay exposed the plaintiff to an unreasonable risk of harm, *i.e.,* the
meat hooks that were six inches from plaintiff's head and into which he fell,
injuring his mouth.

one of embarrassment and the unintended one of injury. The battery — an indirect offensive touching, a technical invasion of the plaintiff's personal integrity — was proved. However, a specific instruction on negligence — namely, that the defendant had a duty to refrain from conduct exposing the plaintiff to unreasonable risk of injury and breached that duty, resulting in her injury — was not requested. Nor was any exception made to the general negligence instruction that was given. Nor did the plaintiff at trial take the unequivocal position that she was proceeding on a theory of negligence, notwithstanding the co-existence of an intentional act, *i.e.,* a battery. *See, e.g., Maneikis v. St. Paul Insurance Co.,* 655 F.2d 818 (7th Cir. 1981) (malpractice and fraud not mutually exclusive theories of recovery; same act may give rise to claims of both). In sum, appellants are asserting now the arguments they should have made at trial. Such hindsight can avail them nothing.

*Judgment affirmed; appellants to pay the costs.*