492 A.2d 1352

David M. McCANCE, et ux.

v.

Jules W. LINDAU, IV.

No. 1238, Sept. Term, 1984.

Court of Special Appeals of Maryland.

June 6, 1985.

Joel Chasnoff, Olney, for appellants.

Laurie R. Bortz, Baltimore (Barry Bach and Smith, Somerville & Case, Baltimore, on the brief), for appellee.

Argued before GILBERT, C.J., and WILNER and GETTY, JJ.

GILBERT, Chief Judge.

We are asked in this appeal to apply the Soldiers' and Sailors' Civil Relief Act of 1940 (SSCRA)[1] so as to permit a career naval officer, a physician, to circumvent the Maryland Statutes of Limitations and thus maintain certain actions in tort. Before discussing the applicable law, we shall set the stage on which this drama unfolded.

The "Declaration" of the appellants, David M. McCance and Ruth E. McCance, reads as if written for a television "chase scene." We explain.

### The Allegations

The McCances claim that on or about October 9, 1980, they, along with Dr. McCance's three children, were sitting in their parked car in the lot of a Pizza Hut restaurant in Frederick, Maryland. A car driven by Jules W. Lindau, IV, pulled in behind them and blocked their exit. Lindau, an attorney, was recognized by the McCances because he had represented Dr. McCance's ex-wife in her divorce proceedings against the doctor. Because their exit from the parking space was blocked, the McCances drove forward over a grassy area of the parking lot. Lindau followed in what the McCances described as a "high speed" car chase. According to the appellants, Lindau's "automobile frequently ... [struck] Appellants' rear bumper."

When the McCance family stopped at a McDonald's restaurant, Lindau pursued Mrs. McCance on foot. She sought refuge in the ladies restroom. There, another wom-

---

1. 50 U.S.C.App. § 501–591 (1940).

an offered her a "getaway" ride. Mrs. McCance hid in her benefactor's car and was driven to a place where she was reunited with her immediate family.

Once reunited, the McCances headed for home and there they deposited the children safely in the house. When Mrs. McCance, minus the children, left the residence, Lindau continued to chase[2] her "at a very high rate of speed."[3] The pursuit allegedly placed Mrs. McCance "in great fear and danger." Finally, she called a halt to the vehicle chase and parked her car at a shopping mall. In the mall, the "great chase" continued afoot. Finally, Mrs. McCance hailed the State police.[4] When Lindau was questioned by the officer, he told him that he was attempting to serve Dr. McCance with some legal papers. He continued, according to appellants, to follow Mrs. McCance "around the Mall until she was eventually able to escape from his view and return to" her husband.

The McCances filed suit in the Circuit Court for Frederick County on October 5, 1983, just three days short of three years from the date of the alleged incidents. Their declaration against Lindau averred actions of assault, assault and battery, invasion of privacy, slander by conduct, and negligence. It also asserted a total claim of $7,500,000—$2,500,000 compensatory damages and $5,000,000 punitive damages. The trial court granted summary judgment against the McCances, holding that the actions were barred by limitations, and that the SSCRA did not apply.[5]

---

2. The record is unclear as to the whereabouts of Dr. McCance at that particular time or why Mrs. McCance left the security of the home and continued to play a principal role in this melodrama.

3. In any "chase," it is the lead vehicle which sets the pace.

4. Why that simple solution did not occur to the McCances at an earlier point in time is not explained in the record before us.

5. The counts charging invasion of privacy and slander by conduct were brought by Mrs. McCance solely. The applicability *vel non* of limitations is not challenged in this Court as to those two counts.

### The Issues

"I. Whether the lower court was in error by holding [that] the Appellant ... must show [that] his military service prejudiced him from filing his suit in a timely fashion before he can invoke protection from the Soldiers' and Sailors' Relief Act [of 1940], 50 U.S.C. Appx. Section 525?

II. Whether the lower court erred in granting the Appellee's Motion for Summary Judgment on the basis that Count Five of the Declaration, a negligence count, was barred by a one-year statute of limitations for intentional torts?"

### The Law

#### I.

The trial court held that the SSCRA does not serve to protect Dr. McCance [6] from the Maryland statutes of limitations.[7] Section 525 of the SSCRA provides:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law ... for the bringing of any action or proceeding in any court ... by or against any person in military service ... whether such cause of action or the right or privilege to institute such action or proceeding shall have

---

Insofar as Mrs. McCance is concerned, the issue of whether limitations apply is raised with respect to the negligence count only.

6. Mrs. McCance concedes that the federal legislation does not afford her any protection.

7. The applicable statutes of limitations are codified in Md.Cts. & Jur.Proc.Code Ann. §§ 5–101 and 5–105. Section 5–101 provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Section 5–105 reads: "An action for assault, battery, libel, or slander shall be filed within one year from the date it accrues."

accrued prior to or during the period of such service...." [8]

The trial court reasoned that Congress never intended to provide blanket protection for all servicemen, including career military personnel who might be on active duty for decades. Thus, the judge required that Dr. McCance prove that he was prejudiced by his military duties from filing a timely suit. The trial judge cited to several other courts which have held that § 525 does not apply to "career" servicemen. *See, e.g., Pannell v. Continental Can Co., Inc.,* 554 F.2d 216 (5th Cir.1977); *King v. Zagorski,* 207 So.2d 61 (Fla.1968); *Bailey v. Barranca,* 83 N.M. 90, 488 P.2d 725 (1971).

All three of those cases, *Pannell, Bailey,* and *King* involve what is loosely termed "career service" personnel. All three use the appellation "career service," but none of the three defines what is meant by "career service." Today's military forces are purely volunteer services. No one in the armed forces today is a "draftee" or conscript. Consequently, we ask rhetorically at what point a person in the military of the United States becomes a "career service" person? When, under the trilogy of *Pannell, King,* and *Bailey* is that person placed outside the ambit of the SSCRA? Does the mere act of enlistment, *vis a vis* conscription, constitute a "career" service person or does that nomenclature apply after 60 days service, 90 days service, 5 years service, 10 years service, or during the 18th year of service?

---

**8.** Section 511(2) of the Act defines the "period of military service" to "include the time between the following dates: For persons in active service at the date of the approval of this Act [Oct. 17, 1940] it shall begin with the date of approval of this Act [Oct. 17, 1940]; for persons entering active service after the date of this Act [Oct. 17, 1940], with the date of entering active service. It shall terminate with the date of discharge from active service or death while in active service, but in no case later than the date when this Act [said sections] ceases to be in force."

Section 511(1) defines "military service" as "Federal service on active duty with any branch of service...."

We have carefully reviewed the SSCRA and fail to find therein any indication that it was not to apply to "career" service personnel. We acknowledge that § 510 of the Act declares:

"In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defense, provision is made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for *the temporary suspension of legal proceedings* and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act [sections 501 to 591 of this Appendix] remains in force." (Emphasis supplied.)

Significantly, the word "temporary" is not defined by the Act, and we have learned through experience that nothing is more permanent than that which is legislatively designated as temporary. Indeed, the "temporary suspension of legal proceedings" afforded by the act has endured for forty-five years. It has survived three wars: World War II, Korea, and Vietnam, and other military engagements, such as Grenada.

We reject the rationale of *Pannell, King,* and *Bailey.* We do so because we think those courts have bottomed their reasoning on two false premises. One, they are unwilling to abide by the clear, unambiguous wording of § 525, indicating that the section applies to all persons in the military service and not merely to conscripts or draftees. Second, the holdings of *King,* reiterated in *Bailey,* and repeated in *Pannell* are that the career service person must show some sort of prejudice as a result of being in the military, before he or she can invoke § 525. That reasoning

proves fallacious when viewed in the light of the other provisions of the Act.

Certain provisions of the SSCRA confer upon the courts the explicit authority to remove the umbrella of protection afforded by the Act with respect to those particular sections. The protective shield may not be removed, however, unless the court is of the opinion that being in the military does not materially affect the ability of the service person to prosecute or defend an action. For example, 50 U.S.C. App. § 520(4) expressly provides that prejudice by reason of service in the military must be shown in order to open a default judgment. Section 521 plainly confers upon courts the right to grant a stay of proceeding, if the court is of the opinion that the service person's ability to participate in the lawsuit is materially affected by reason of his or her military service. What has been said of §§ 520(4) and 521 is also true with respect to other sections of the Act, namely, § 522 (fines and penalties), § 523 (execution on or attachments on judgments), § 526 (interest rates), and § 531 (installment contracts).

Each of the above enumerated sections of the SSCRA definitely provides protection to the service person only if he or she demonstrates prejudice or hardship in maintaining or defending a civil proceeding, and the prejudice or hardship is caused by being in the military service. Nevertheless, § 525, directed at limitations of actions, contains no qualifying language. That section contains no explicit authority permitting a court to find that the service person's ability to defend or prosecute an action has not been materially affected by reason of military service, and, thus, as a result of that finding snatch away the protective cloak of the SSCRA. Yet, the *Pannell, King,* and *Bailey* courts held that § 525 was not a barrier to limitations because the service person's ability to defend was not materially affected. *Pannell,* 554 F.2d at 225; *King,* 207 So.2d at 67; *Bailey,* 83 N.M. at 94–95, 488 P.2d at 729–30. As we see it, those courts rewrote § 525 and judicially

engrafted upon the statute a provision that the Congress had not provided. We think that judges in the guise of interpreting statutes should not convert the law from what it really is to what the judges think it ought to be. *R. v. Ramsey*, 1 C & E. 126, 136 (1883).

We believe that the United States Court of Claims in *Bickford v. United States*, 656 F.2d 636 (Ct.Cl.1981), articulated the proper test for determining the applicability of § 525. The *Bickford* court said:

"The express terms of the SSCRA make certain that the tolling of the statute of limitations is unconditional. The only critical factor is military service; once that circumstance is shown, the period of limitations is automatically tolled for the duration of service."

656 F.2d at 639. *See also Ricard v. Birch*, 529 F.2d 214 (4th Cir.1975).

■ The critical circumstance for tolling the statutes of limitations in the instant case is Dr. McCance's military service. Once it was established that the doctor was on military duty, the Maryland statutes of limitations were automatically tolled for the duration of that service. Dr. McCance's claim against Mr. Lindau did not have to be filed until the doctor was discharged from naval service.

■ In holding that § 525 is to be applied unconditionally to those on active military duty, we are cognizant of the possibility that absurd results may ensue. Conceivably, a career military serviceman could for any reason or no reason at all wait 30 years or more before filing a law suit.[9] The Damoclean sword, suspended by a single section of the SSCRA over the head of the civilian populace, was placed there by Congress. It is for Congress to sheath or remove that sword, if it so desires.

---

**9.** The instant case does not present such a situation because, as we have seen, the McCances filed suit just short of three years from the date of the alleged harassment.

Section 525 was first enacted in 1917–1918 when the United States was engaged in World War I. (*See* SSCRA of 1918, ch. 20, 40 Stat. 440, § 205.) For more than 65 years Congress has not repealed or amended § 525, even though it has taken the time and energy to amend other sections of the Act. *See Bickford,* 656 F.2d at 640. What stronger endorsement can there be of clear Congressional intent?

## II.

■ We now turn to the McCances' negligence claim. The trial judge reasoned that the negligence count should be barred by the one year statute of limitations. He held that the negligence count, "alleged the same facts set forth in the assault and battery count." The judge opined that the acts in question were intentional acts, and, therefore, could not be disguised as negligent acts. The trial court explained that there was no duty owed by Lindau to McCance, hence there could be no breach of that duty and, therefore, no action for negligence could be maintained.

We disagree. What the trial court characterizes as a restatement of a claim for assault, we perceive to be a claim for the negligent infliction of emotional distress—inartfully worded, but legally sufficient.

■ A plaintiff may maintain an action for damages for a negligent act which causes nervous shock resulting in clearly apparent and substantial physical manifestations. *Vance v. Vance,* 286 Md. 490, 408 A.2d 728 (1979); *Bowman v. Williams,* 164 Md. 397, 165 A. 182 (1933). That an intentional act can give rise to an action in negligence is beyond question.

■ In *Ghassemieh v. Schafer,* 52 Md.App. 31, 447 A.2d 84 (1982), *cert. denied,* 294 Md. 543 (1982), a thirteen year old girl pulled away a chair upon which her teacher was about to sit. The trial court instructed the jury that if they found the girl had committed a battery, that would preclude a finding of negligence. Judge Moore, writing for this Court, said that the instruction was wrong. He explained

that the intentional act of moving the chair could have the unintended result of serious injury. In the case at bar, while Lindau allegedly committed the intentional act of pursuing the plaintiffs and their children in a high speed car chase, he might not have intended to cause the plaintiffs' emotional trauma, yet he may have negligently done so. The absence of intent is essential to the concept of negligence, *Adams v. Carey,* 172 Md. 173, 186, 190 A. 815, 821 (1937), *Ghassemieh v. Schafer,* 52 Md.App. at 40, 447 A.2d at 89; but the presence of intent to do an act does not preclude negligence. *Ghassemieh v. Schafer,* 52 Md.App. at 40, 447 A.2d at 89.

As Judge Moore pointed out for the Court in *Ghassemieh,* one could intend to perform a particular act, but that act may produce unintended consequences. 52 Md.App. at 42, 447 A.2d at 90. Lindau could have intended merely to have the McCances accept service of process, but in so doing he may have acted in such a negligent manner as to cause the infliction of emotional distress.

 Moreover, we disagree with the trial court that there was no duty to be breached. When a reasonable person knows or should have known that certain types of conduct constitute an unreasonable risk of harm to another, he or she has the duty to refrain from that conduct. *Ghassemieh v. Schafer,* 52 Md.App. at 40, 447 A.2d at 89. Any reasonable person should know that a high speed car chase, including bumping cars, constitutes an unreasonable risk of harm. Since the negligence count falls safely within the three year limit, Courts art. § 5–101, it is not barred by limitations, even if SSCRA were not applicable.

With respect to Dr. McCance, the summary judgment for the defendant is reversed as to the assault, battery, and negligence counts (counts 1, 2, and 5). With respect to Mrs. McCance, the summary judgment for the defendant is reversed as to the negligence count only (count 5).

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.