No. 94,879

CELESTA C. BASKA, *Appellant*, v. HARRY SCHERZER, JR., and CALVIN MADRIGAL, *Appellees*.

(156 P.3d 617)

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 4, 2006. Opinion filed April 27, 2007.

*James M. Sheeley*, of Kansas City, Kansas, argued the cause and was on the brief for appellant.

*James H. Ensz*, of Ensz & Jester, P.C., of Kansas City, Missouri, argued the cause, and *Matthew J. Gist*, of the same firm, was with him on the brief for appellee Harry Scherzer.

*Jeffrey S. Nichols*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Alex B. Judd*, of the same firm, was with him on the briefs for appellee Calvin Madrigal.

The opinion of the court was delivered by

DAVIS, J.: Celesta Baska brought an action for personal injuries sustained when she attempted to stop a fight by stepping between the defendants, Harry Scherzer, Jr., and Calvin Madrigal. Her action was brought after the expiration of a year from her injury but within 2 years from the date of her injury. After some discovery, the trial court granted the defendants' motions for summary judgment and dismissed Baska's action based upon its conclusion that her action was governed by the 1-year statute of limitations for assault and battery, K.S.A. 60-514(b). The Court of Appeals reversed, holding that Baska's action sounded in negligence, and thus was subject to the 2-year statute of limitations under K.S.A. 60-513(a)(4), primarily because she was unintentionally struck by defendants. We granted the defendants' petitions for review, and now we reverse the decision of the Court of Appeals and affirm the district court.

*Facts*

Baska had given her daughter Ashley, a high school senior, permission to organize a "scavenger hunt" with some friends. The scavenger hunt began at the Baskas' house around 8:30 p.m. and was to end with the participants returning to the house by midnight. When people returned, a number of them remained at the Baskas' home for a "party."

Scherzer and Madrigal were both at the party. Madrigal had participated in the scavenger hunt; Scherzer remained at the house while the hunt ensued, playing cards with Baska. He then went outside as people began to return to the house.

Around midnight, an altercation broke out between Scherzer and Madrigal. Madrigal approached Scherzer from behind, and the two boys began to push each other and throw punches at one another. Upon being informed of the fight by one of her daughter's friends, Baska yelled at the boys to stop in order to break up the fight. When they continued to fight, Baska placed herself between the boys and was punched in the face, losing several teeth and receiving injuries to her neck and jaw. Baska is certain that Scherzer hit her in the face; she also believes that Madrigal punched her in the back of the head.

On April 8, 2004, just short of 2 years after the incident, Baska filed suit against Madrigal and Scherzer, alleging that she was injured by the defendants' negligence. In her petition she alleged:

"5. That the defendants, in their excitement and totally unintentionally, struck the plaintiff with powerful blows intended for the other participant in the fight.

"6. That the sole and proximate cause of plaintiff's injuries was the negligence and carelessness of the defendants."

Both defendants filed motions to dismiss based on the statute of limitations, alleging that the suit was barred by the 1-year statute of limitations for assault and battery, K.S.A. 60-514(b). The district court originally granted the motions; however, the court later granted Baska's motion to reconsider and allowed the parties to pursue additional discovery.

Depositions were taken of Baska, Madrigal, and Scherzer. Both Madrigal and Scherzer testified in their depositions that they did

not intend to strike or injure Baska in any way. Instead, each defendant testified that it was his intention in throwing the punches to strike and injure the other defendant. In her deposition, Baska's counsel asked her whether she "would anticipate that the intended recipient of [Scherzer's] blow was Mr. Madrigal and not [herself]." Baska answered, "Yes, sir."

After depositions, Madrigal and Scherzer filed motions for summary judgment again based on the 1-year statute of limitations for assault and battery. In its decision after conducting a hearing, the court concluded that the doctrine of transferred intent applied and that Baska's cause of action was an action for assault and battery, not negligence. The court explained:

"Well, the plaintiff's theory, as I understand it, is that in trying to break up this altercation that she was injured by the negligent acts of the two participants who were defending themselves, each of them claiming self defense, and in a negligent manner.

"The depositions of both of the combatants having been taken now, it appears to me that they were striking at each other. Those are intentional acts. The doctrine of transferred intent has been the law in Kansas probably since this place became a state because I think it came straight out of the common law, and it's certainly been the law since I was in law school 30 years ago.

"I don't see anything in [the plaintiff's] citations . . . that the State of Kansas has gone away from that. So I think that in each of these two cases, each—as to each defendant, motion for summary judgment must be granted on the basis that these are intentional acts and the doctrine transferred intent would apply, and they should have been filed within the one year of statute of limitations."

## Court of Appeals

The Court of Appeals reversed in an unpublished opinion, *Baska v. Scherzer*, Case No. 94,879, filed August 4, 2006. Although the court did not dispute the district court's statement of the facts, it disagreed with the district court's conclusion. The Court of Appeals noted that "[t]he key distinction between assault and battery on one hand, and negligence on the other, is that assault and battery are both intentional torts and negligence is unintentional. [Citation omitted.]" Slip op. at 5. The court ultimately held that the plaintiff's action in this case sounded in negligence, because the plaintiff was "unintentionally struck" by the defendants. Slip op. at 14.

The Court of Appeals reviewed a number of Kansas decisions as well as a number of cases from other jurisdictions, concluding that "the law on this issue is unclear." Slip op. at 6-13 (citing *Harris v. Richards*, 254 Kan. 549, 867 P.2d 325 [1994]; *Hackenberger v. Travelers Mutual Cas. Co.*, 144 Kan. 607, 62 P.2d 545 [1936]; *Byrum v. Edwards*, 66 Kan. 96, 71 Pac. 250 [1903]; *Laurent v. Bernier*, 1 Kan. *428 [1863]; and *Vetter v. Morgan*, 22 Kan. App. 2d 1, 913 P.2d 1200, *rev. denied* 257 Kan. 1096 [1995]). The court noted that "*Laurent, Byrum,* and *Hackenberger* tend to suggest that Baska's only cause of action is assault and battery because Madrigal and Scherzer acted intentionally." Slip op. at 12. Nevertheless, it noted that "[a]lthough these cases have not been overruled, they appear inconsistent with *Vetter* and the dicta in *Harris*." Slip op. at 12. In light of these inconsistencies, the court explained its synthesis of these decisions as follows:

"The law on this issue appears to have shifted from the earlier position that an intentional act of violence, which has an unintentional effect on a third party, must be viewed as assault and battery for purposes of application of the statute of limitations. . . .

. . . .

"If we can take guidance from these cases, it appears that a specific intent to perform a certain act, such as shooting someone, even if there is a mistaken identity, will generally lead to a finding that the 1-year limitation on assault and battery is applied.

"However, threatening actions which lead to unanticipated results may well be viewed as negligence as long as the plaintiff is not purposefully and intentionally struck by the defendant.

"We have a blending in this case, where Baska was probably unintentionally struck during a fight between Scherzer and Madrigal. Although the law may not be clear, we find the rationale in *Vetter* should be used. We, therefore, reverse the district court's finding that the 1-year statute of limitations applied and remand for further proceedings." Slip op. at 13-15.

Both defendants, Madrigal and Scherzer, filed petitions for review, claiming that the Court of Appeals misstated the applicable law. In particular, the defendants argue that the Court of Appeals, without any discussion thereof, eviscerated the doctrine of transferred intent by holding a negligence tort action lies for an assault and battery when the injured party is not the intended victim.

The sole issue we must resolve is whether plaintiff's action is governed by the 1-year statute of limitations for assault and battery under K.S.A. 60-514(b) or by the 2-year statute of limitations for negligence under K.S.A. 60-513(a)(4). The facts are not in dispute, and the answer to this question is one of law.

*Standard of Review*

Baska appeals from the district court's grant of summary judgment on the basis that she filed her claim after the 1-year statute of limitations for assault and battery had run.

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

Where the facts are undisputed, appellate review of an order granting summary judgment is de novo. *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

*Discussion and Analysis*

While the plaintiff alleges negligence in her petition, calling for the application of a 2-year statute of limitations, this court is not bound by the claims as set forth in the petition. Instead, " '[t]he law of this state is realistic. Substance prevails over form.' " *Murray v. Modoc State Bank*, 181 Kan. 642, 647, 313 P.2d 304 (1957) (quoting *Travis v. Bishoff*, 143 Kan. 283, 285, 54 P.2d 955 [1936]). The determinative question is whether the substance of plaintiff's claims against the defendants sounds in assault and battery or negligence.

K.S.A. 60-514(b) provides that civil actions for assault and battery must be initiated within 1 year of the date of the incident giving rise to the action. Under K.S.A. 60-513(a)(4), negligence claims must be brought within 2 years. The fight between defendants that resulted in the plaintiff's injuries occurred on April 13, 2002. Baska filed her action on April 8, 2004. The outcome of this case depends upon whether Baska's claims are in substance based upon intentional or negligent actions of the defendants. If intentional, Baska's claims are barred by the 1-year statute of limitations; if negligent, her claims are not barred and are governed by the 2-year statute of limitations.

Assault is defined in this state as "an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary." PIK Civ. 3d 127.01; see *State v. Hazen*, 160 Kan. 733, 740-41, 165 P.2d 234 (1946). Battery is defined as "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact, that is harmful or offensive." PIK Civ. 3d 127.02; see *Laurent*, 1 Kan. at *431. The gravamen of a civil assault and battery is grounded upon the actor's intention to inflict injury. *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824 (1964).

In order to state a claim for negligence, a plaintiff must show " '(1) [t]he existence of a duty on the part of defendant to protect plaintiff from the injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant.' " *Murray*, 181 Kan. at 646 (quoting *McMillen v. Summunduwot Lodge*, 143 Kan. 502, 509, 54 P.2d 985 [1936]). Put another way, " ' " '[n]egligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred.' " ' " *Murray*, 181 Kan. at 646 (quoting *McMillen*, 143 Kan. at 509, and 45 C.J. 631).

As these definitions make clear, "the fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional*. [Citations omitted.]" *Murray*, 181 Kan. at 646; see

*Baska,* slip op. at 5. The district court held that Baska's cause of action was truly one for assault and battery because the defendants intended to strike one another when they were fighting. The Court of Appeals, however, found that where Baska was "unintentionally struck" by the defendants, her cause of action sounded in negligence. *Baska,* slip op. at 15. The defendants intended to harm each other, but as Baska claims in her petition, "the defendants, in their excitement and *totally unintentionally,* struck the plaintiff *with powerful blows intended for the other participant* in the fight." (Emphasis added.)

The above situation is not unfamiliar in the law of intentional torts. The Restatement (Second) of Torts and this court's decisions discuss this situation as being contemplated by the long-standing doctrine of transferred intent. The Restatement explains that the term "intent," as it is used in the law of torts, "denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1964). The comments to this section state that

"[a]ll consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness . . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence . . . ." Restatement (Second) of Torts § 8A, comment b.

This court has similarly explained that an actor will be held liable for an intentional tort if the plaintiff's injuries were the "natural and probable consequence of [the defendant's] intended actions." *Harris,* 254 Kan. at 554. However, an action need not be directed at the plaintiff in order to give rise to liability for intentional torts (such as assault or battery). Rather, the doctrine of transferred intent states that "[t]he tort of battery or of assault and battery may be committed, although the person struck or hit by the defendant

is not the one whom he intended to strike or hit." 6 Am. Jur. 2d, Assault and Battery § 99, p. 83.

The comments to the Restatement (Second) of Torts, in describing the intent necessary for battery, explain:

"The intention which is necessary to make the actor liable [for civil battery] is not necessarily an intention to cause a harmful or offensive contact or an apprehension of such contact *to the plaintiff himself* or otherwise to cause him bodily harm. It is enough that the actor intends to produce such an effect *upon some other person* and that his act so intended is the legal cause of a harmful contact to the other. It is not necessary that the actor know or have reason even to suspect that the other is in the vicinity of the third person whom the actor intends to affect and, therefore, that he should recognize that his act, though directed against the third person, involves a risk of causing bodily harm to the other so that the act would be negligent toward him." (Emphasis added.) Restatement (Second) of Torts § 16, comment b (1964).

Similarly, the comments to the section describing the intent required to state an action for assault state that "[i]n order to become liable [for civil assault], it is necessary that the actor intend to inflict a harmful or offensive bodily contact upon the other *or a third person* or put him [her] in apprehension of such contact." (Emphasis added.) Restatement (Second) of Torts § 21, comment f (1964).

This court's recognition of the transferred intent principle dates to *Laurent*, 1 Kan. *428, which was decided during the Civil War. In that case, the plaintiff sued the defendant in negligence, alleging that he had been injured when the defendant negligently shot him. This court determined that the plaintiff's claim was barred by the 1-year statue of limitations for battery, because the action described (shooting someone) was a battery. 1 Kan. at *432. The court cited a New York decision in *Bullock v. Babcock*, 3 Wend. 391 (1829), and referred to "several English authorities" that supported its conclusion that "the wounding charged in the case under consideration may properly be described as a battery, and the case, therefore, comes within the provisions . . . limiting the time for commencing action to one year." 1 Kan. at *431-32.

This conclusion was reiterated in *Byrum*, 66 Kan. 96. There, both the plaintiff and an undersheriff were searching for the perpetrator of a robbery in Oswego. When the two searchers met,

each mistakenly thought the other was the robber. Both fired shots, and the undersheriff's shot hit the plaintiff. The plaintiff then sued the sheriff "to recover damages for the injuries sustained because of the negligent shooting of him by his under-sheriff." 66 Kan. at 97. In a very short opinion, this court cited *Laurent* and held that the action was barred by the 1-year statute of limitations. 66 Kan. at 97. This court later summarized its opinion in *Byrum* as follows: "It is well to note the shooting in the *Byrum* case was in fact intentional. The undersheriff intended to shoot and he did shoot. True, the injured party was not the robber as the undersheriff thought, but the act of shooting was nevertheless intentional." *Hackenberger*, 144 Kan. at 609.

These two early opinions were discussed in detail by this court in *Hackenberger*, wherein the plaintiff was a passenger in the back of a truck and was sitting with his legs over the side. A cattle truck coming the other direction was passing another car as it was speeding around a curve; the cattle truck crowded the plaintiff's truck off of the highway and came into contact with the plaintiff's legs, causing him injury. The plaintiff filed suit in negligence. The defendant, however, claimed that the petition actually stated an action for battery and thus was barred by the 1-year statute of limitations. Citing *Laurent* and *Byrum*, this court clarified that had the driver of the cattle truck *intended* to hit the truck on which the plaintiff was riding, the action should have been dismissed. 144 Kan. at 609-10. However, because "[t]he petition is not susceptible of an interpretation that [the driver of the cattle truck] intentionally inflicted the injury," the court held that the 2-year limitations period for negligence should be applied. 144 Kan. at 611.

Although the court did not explicitly state that it was applying the doctrine of transferred intent in these early decisions, the outcome of the cases is consistent with the present understanding of transferred intent in tort cases. In *Byrum*, the officer intended to shoot the robber and mistakenly shot and injured the plaintiff. The court found that the officer's action was intentional and that the 1-year statute of limitations for assault and battery applied. In *Hackenberger*, the driver of the cattle truck never intended to drive the truck carrying the plaintiff off of the road or to hit anyone. When

the truck hit the plaintiff's legs, the plaintiff's action sounded in negligence, and the 2-year statute of limitations was proper.

The Court of Appeals correctly concluded that *Laurent, Byrum,* and *Hackenberger* suggested that Baska's only cause of action was for assault and battery based upon defendants' intentional acts. Slip op. at 12. However, the Court of Appeals concluded that it was not bound to follow these earlier decisions in light of "dicta" in *Harris* and the decision of the Kansas Court of Appeals in *Vetter.* These two decisions are discussed below, but it must be noted that the Court of Appeals did not discuss the doctrine of transfer in its opinion, a doctrine implicitly applied in Kansas civil law and explicitly applied in criminal law. See *Laurent,* 1 Kan. at *431; *Byrum,* 66 Kan. at 96; *State v. Stringfield,* 4 Kan. App. 2d 559, 561, 608 P.2d 1041, *rev. denied* 228 Kan. 807 (1980).

In the *Harris* case, the plaintiff was injured when Douglas Hawley fired a shotgun through the window of the plaintiff's pickup truck, killing Hawley's ex-wife and injuring Harris. Hawley then killed himself. Harris brought a negligence action against Hawley's estate to recover damages, asserting that Hawley had only intended to shoot his ex-wife and that his injuries arose out of Hawley's negligence. The key issue in *Harris* was whether the act giving rise to liability was intentional, and thus excluded from coverage under the actor's homeowner's insurance policy. The trial court ruled that the plaintiff's claim against the estate was limited to any applicable insurance coverage. The court then granted the estate's motion for summary judgment on the basis that the shooting was not a covered occurrence under Hawley's parent's homeowner's policy and that Hawley's acts were excluded under the policy because they were intentional. This court affirmed. 254 Kan. at 556. Our decision in *Harris* is in this way consistent with our earlier decisions in *Laurent* and *Byrum,* based on the intentional act of Hawley injuring an unintended victim.

However, the Court of Appeals concluded, based upon the following dicta in *Harris,* that the precedent in *Laurent, Byrum,* and *Hackenberger* no longer controlled:

"The Richards [Hawleys' parents and the administrators of his estate] argued [before the trial court] that the fundamental nature of the underlying tort was that

of a battery rather than negligence. Consequently, they asserted that K.S.A. 60-514(2), the one-year statute of limitations for battery, barred the claim, and they *moved for dismissal*. The motion was denied. The Richards cross-appeal the denial of their motion to dismiss.

"Because we have affirmed the trial court's analysis of the insurance coverage issue, we find it unnecessary to address the cross-appeal other than to indicate we find no error in the trial court's ruling on the statute of limitations issue." (Emphasis added.) 254 Kan. at 550-51.

The Court of Appeals found that this language in *Harris* was "inconsistent" with this court's previous decisions in *Laurent, Byrum,* and *Hackenberger.* It based its decision upon the erroneous conclusion that the trial court denied *a summary judgment motion* requesting a 1-year limitation period, which "the Kansas Supreme Court, in dicta, found not to be in error. [Citation omitted.]" *Baska,* slip op. at 13-14. However, the dicta in *Harris* involved an appeal from a motion to dismiss, not a motion for summary judgment. A motion to dismiss must be based solely on the petition. K.S.A. 60-212; *Gardner v. McDowell,* 202 Kan. 705, 706, 451 P.2d 501 (1969). Thus, based upon the petition only in *Harris,* this court approved the actions of the trial court in its conclusion not to dismiss because the petition in *Harris* was not invalid on its face with regard to the statute of limitations.

Only after discovery in *Harris* did the trial court grant the defendants' *motion for summary judgment,* finding that there was no question that Hawley had intended to strike his wife and instead struck the plaintiff. At this point, the decision of this court in affirming the trial court's grant of summary judgment was entirely consistent with our previous decisions in *Laurent, Byrum,* and *Hackenberger.* The dicta in *Harris* was misunderstood by the Court of Appeals and provides no support for its conclusion that it was not bound to follow earlier decisions of this court. Correctly understood and applied, the *Harris* dicta actually supports the district court's grant of summary judgment in this case based upon the conclusion that the defendants' actions were intentional.

The Court of Appeals cited this court's decision in *Murray,* 181 Kan. 642, as "characteriz[ing] a blatant assault and battery as negligence. [Citation omitted.]" *Baska,* slip op. at 14. The court noted

that *Murray* was "based on a puzzling pleading ruling." Slip op. at 14. Again, the Court of Appeals' characterization of *Murray* is incorrect. Although the facts giving rise to that case involved injuries arising from a physical altercation with a bank cashier, the case itself was based on the bank's negligent hiring of the cashier in question. 181 Kan. at 644-45. This court explicitly stated that the action was not brought under respondeat superior, which would make the principal responsible for the acts of the servant. 181 Kan. at 649. The *Murray* decision based upon a negligent hiring has no application to the case we now consider.

The Court of Appeals' decision below relied most heavily on its previous decision in *Vetter*, 22 Kan. App. 2d 1. In that case, the plaintiff's van ran off of the road after the defendant, a passenger in another vehicle, made verbal threats to the plaintiff and the car in which the defendant was riding veered at the plaintiff's van. The defendant claimed that he "did not intend to scare, upset, or harm Vetter," but instead was attempting to amuse the other passengers in the car with him. 22 Kan. App. 2d at 2. The plaintiff brought a number of claims against the defendant, including a claim for negligence. The trial court dismissed the negligence claim as a matter of law, finding that the defendant's actions were intentional.

The Court of Appeals held that the trial court erred in dismissing the plaintiff's negligence claim. It explained:

"A negligence claim may be based on intentional rude pranks and horseplay that cause unintended injury. [Citation omitted.] Actions that are not intended to, but do cause fear of harm may be negligence. [Citation omitted.] Moreover, a negligence claim may be based on actions the defendant intends to affect, or should realize are likely to affect, the conduct of another in a manner that creates an unreasonable risk of harm to another. . . .

". . . Although Morgan [the defendant] said his only intent was to amuse his friends, and he denied that he intended to frighten or harm Vetter, she testified that she was 'very, very frightened.' The record supports a reasonable inference that Morgan should have realized Vetter would be frightened and that it was foreseeable that her fright would create a risk of harm." 22 Kan. App. 2d at 5-6.

The *Vetter* court then concluded that the facts, when viewed in the light most favorable to the plaintiff, might be read to show that the defendant's actions proximately caused Vetter's injuries. Thus, the court held that plaintiff's negligence claim should be brought

before a jury, and so it was error for the trial court to dismiss the action. 22 Kan. App. 2d at 6-7.

The Court of Appeals found that *Vetter* stood for the proposition that a negligence action may be brought to recover from "the unintended results of the intentional acts." *Baska*, slip op. at 14. The court then used this rationale to hold that the facts in this case supported Baska's negligence claim, since defendants Madrigal and Scherzer did not intend to strike her.

Contrary to the Court of Appeals' conclusion, *Vetter* does not provide support for Baska's negligence claim in the case we now consider. There was no question in *Vetter* that the defendant did not intend to frighten the plaintiff; instead, the *Vetter* court made clear that his actions were negligent—although they were not intended to cause injury, they created a foreseeable risk of harm. See *Vetter*, 22 Kan. App. 2d at 5-6. The facts in *Vetter* contrast sharply with the facts in this case. Vetter engaged in a prank but did not intend to frighten the plaintiff. Defendants Madrigal and Scherzer engaged in a fight, intending to harm one another. As the comment to the Restatement explains: "All consequences which the actor desires to bring about are intended." Restatement (Second) of Torts § 8A, comment b. Vetter did not intend to frighten the plaintiff, but it was foreseeable that his intentional actions would frighten the plaintiff. Defendants Madrigal and Scherzer intended to punch someone (the other defendant) and *did* punch someone (the plaintiff). Although their actions were not specifically directed at the plaintiff, their punches were intentional acts and did injure Baska.

The exact scenario presented in this case was described in the Corpus Juris Secundum as a "text book" example of transferred intent:

" 'It is not necessary, to constitute an assault and battery, that there be a specific intention of striking or otherwise injuring plaintiff. If defendant unlawfully aims at one person and hits another, [under the doctrine of transferred intent] he is guilty of assault and battery on the person hit, the injury being the direct, natural, and probable consequence of the wrongful act. *So, if one of two persons fighting unintentionally strikes a third, the person so striking is liable in an action by the third person for an assault and battery.*' " (Emphasis added.) *Morrow v. Flores,*

225 S.W.2d 621, 624 (Tex. Civ. App. 1949, *reh. denied* January 6, 1950) (quoting 6 C.J.S., Assault and Battery § 10[2], p. 804).

The decision of the Court of Appeals in this case holds that for a tort to be considered intentional, it must cause injury to the person at whom it was directed. In other words, a defendant must have a specific intent to commit the battery *on the plaintiff* to be liable to the plaintiff for battery; otherwise the defendant may be liable to the plaintiff in negligence. Its decision is contrary to the law of Kansas expressed in *Laurent, Byrum,* and *Hackenberger,* and to the provisions regarding transferred intent included in the Restatement (Second) of Torts and other authorities.

The defendants' acts of throwing punches in this case were *intentional* actions. Each defendant intended to strike at the other in order to cause harm. The defendants intended to punch, and they did punch. The fact that the punches in question hit the plaintiff rather than the defendants is immaterial to the analysis. Because the defendants' actions were intentional, the "substance" of Baska's action is one for assault and battery. Failure to initiate her action within 1 year of the fight bars her action by reason of the 1-year statute of limitations in K.S.A. 60-514(b).

The Court of Appeals stated that "[o]ther courts have suggested a similar approach." *Baska,* slip op. at 11. However, the court cited only one opinion from the Maryland Court of Appeals that purportedly supported its position; in fact, the *Baska* decision cited seven opinions of other jurisdictions which held under such circumstances that the statute of limitations for assault and battery applied. See slip op. at 11-12. Moreover, the Maryland case cited by the Court of Appeals, *Ghassemieh v. Schafer,* 52 Md. App. 31, 447 A.2d 84, *cert. denied* 294 Md. 543 (1982), fails to support its decision in this case.

In *Ghassemieh,* a teacher brought claims for both battery and negligence against a student for injuries the teacher received when the student pulled the chair out from under her. The Maryland court held that the plaintiff could bring her negligence claim even when the act of pulling the chair out from under her was intentional. The court explained: "We see no reason why an intentional

act that produces unintended consequences cannot be a foundation for a negligence action." 52 Md. App. at 42. All agreed the defendant did not intend to injure the plaintiff with the prank. The court noted that "an intentional act—the pulling away of the chair—had two possible consequences: the intended one of embarrassment and *the unintended one of injury*." (Emphasis added.) 52 Md. App. at 42-43. However, the court found that because the plaintiff had failed to request a negligence instruction, she could not appeal the verdict for the defendant on the negligence claim. 52 Md. App. at 43.

The language cited in *Ghassemieh*, though inconsequential to its holding in light of the plaintiff's failure to request an instruction on the issue, is quite similar to the Kansas Court of Appeals' decision in *Vetter*. The defendants in both cases did not intend to injure the plaintiff with the prank; however, foreseeable injury resulted. Neither *Vetter* nor *Ghassemieh* presents a situation that involves transferred intent and neither case provides a reason to reverse the district court's grant of summary judgment for the defendants in this case.

A similar pleading question was considered by the Ohio Supreme Court in *Love v. Port Clinton*, 37 Ohio St. 3d 98, 524 N.E.2d 166 (1988). There, Love was arrested and handcuffed by Hickman, a Port Clinton police officer. Love later sued the city, claiming that Hickman used improper police procedures and injured him. The trial court granted Hickman's motion to dismiss based on the fact that Ohio's 1-year statute of limitations for assault and battery had run. The Ohio Court of Appeals reversed, finding that "further development of the facts could show that Hickman acted negligently in handcuffing Love. If such could be shown, . . . plaintiff should have received the benefit of the two-year statute of limitations for personal injury." 37 Ohio St. 3d at 98.

The Ohio Supreme Court reversed, holding that " 'courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.' " 37 Ohio St. 3d at 99 (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 [1984]). The

court found that "the specific acts of Officer Hickman—'subduing' and 'handcuffing'—are acts of intentional contact which, unless privileged, constitute a battery." 37 Ohio St. 3d at 99. "Love's complaint against Hickman alleges, in substance, an action in battery and is barred by the one-year statute of limitations." 37 Ohio St. 3d at 100. The court explained:

"Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence. . . . '[T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done.' " 37 Ohio St. 3d at 99-100 (quoting *Grimm v. White,* 70 Ohio App. 2d 201, 203, 435 N.E.2d 1140 [1980]).

*Conclusion*

The undisputed facts in this case show that the defendants intended to strike and cause harm to one another. When Baska intervened and stepped between the two boys, she was "unintentionally" struck by punches intended for the defendants. Had the defendants struck each other and brought suit, they would be liable to one another for assault and battery. Under the doctrine of transferred intent, which has long been recognized in this state, the fact that the defendants struck the plaintiff does not change the fact that their actions (punching) were intentional. Moreover, the fact that Baska's petition describes her claims against the defendants as actions for negligence does not alter the nature of those claims, which the law recognizes as claims for intentional torts of assault and battery. The trial court correctly granted defendant's motion for summary judgment.

The Court of Appeals' decision reversing the district court is reversed, and the decision of the district court is affirmed.

JOHNSON, J., not participating.

LOCKETT, J., Retired, assigned.