## EDGAR H. SCHAEFFER ET AL *v.* WARREN F. STERLING, RECEIVER

[No. 19, April Term, 1939.]

*Decided May 17th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

554

*Theodore F. Brown* and *H. Ralph Cover,* with whom were *James E. Boylan, Jr.,* and *Fringer & Sponseller* on the brief, for the appellants.

*D. Eugene Walsh,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Carroll County, overruling exceptions of Edgar H. Schaeffer and others to the second and third distribution accounts of the Bank Commissioner as receiver of the Pleasant Valley Bank of Carroll County.

In 1931, after Nevin W. Crouse, the cashier, had embezzled about $29,500 of the bank's funds, Schaeffer was delegated by the board of directors to call upon the cashier's parents, Samuel E. Crouse and Clara J. Crouse, with the object of restoring the loss. Accompanied by the attorney for the bank and an agent for the cashier's bonding company, Schaeffer visited the Crouse home and induced the parents to give to the bank their savings accounts totalling nearly $13,000 and a confessed judgment note for $17,000 with securities as collateral.

Judgment was entered on the note in the Circuit Court for Carroll County and in the Superior Court of Baltimore City. On this debt the parents paid interest and a curtailment of $3000.

Later, upon a bill of complaint filed by the parents, the court passed a decree declaring the judgments void, ordering the return of the securities, and declaring the insolvent bank and its receiver and ten living directors and the administrators of a deceased director all indebted to the complainants in the total sum of $16,832.21.

The Crouses filed with the receiver a claim under the decree, upon which they received their dividend of twenty per cent allowed in the first distribution account. They then proceeded to enforce collection of the remainder from the directors. Schaeffer and five other directors paid $15,784.40, whereupon the decree was entered to their use.

The second and third accounts, each allowing a dividend of twenty per cent, made no distribution to Schaeffer and the other assignees of the decree. The chancellor did not express any opinion as to whether the exceptants had the right to contribution against the other directors. That question has not been considered in this case. The only question before us is whether the appellants are entitled to distribution on their claim.

It is evident from the record that the fears of the aged couple were so aroused by threats that they surrendered nearly everything they possessed with the hope of saving their only son from prosecution. The scheme of the directors of the bank suggested the compounding of a felony and was an undoubted wrong.

According to Pomeroy, the courts should enforce strictly the maxim of equity. "He who comes into equity must come with clean hands." If a person seeking the aid of a court of equity has himself been guilty of any conduct which violates the fundamental conceptions of equity jurisprudence, this maxim refuses him all recognition and relief in reference to the subject. It says that whenever a person seeking some remedy "has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." 1 *Pom.Eq.Jur.* sec 397; *Restatement of the Law of Restitution,* 385.

This maxim is applied whenever the complainant's claim is tainted by his own fraud. Whatever may be the nature of his claim, a court will deny him any relief, and will leave him to whatever remedies he may have at law, if the claim grows out of, or depends upon, or is connected with, his own prior fraud. Equity will leave such parties in exactly the position in which they have placed themselves, refusing all affirmative aid to any of the fraudulant participants. Upon this principle, where two or more persons have entered into a fraudulent scheme for the purpose of obtaining property in which all are to

share, and the scheme has been carried out so that all the results of the fraud are in the hands of one of the parties, a court of equity will not interfere on behalf of the others to aid them in obtaining their share, but will leave the parties in the position where they have placed themselves. 1 *Pom.Eq.Jur.* sec. 401; 19 *Am.Jur., Equity,* sec. 471.

Accordingly it has been held by many courts that this maxim applies to the doctrine of subrogation. This doctrine does not owe its origin to common law or statute. It is a creature of equity. It can not be extended to apply for the benefit and relief of a party who has connived at and assisted in a wrong, for one seeking subrogation must come into court with clean hands. 60 *C.J.* 707. So it has been held in Virginia that a complainant, after he has satisfied a judgment based upon his own delinquency, could not recover from the party for whose benefit the judgment was rendered. *Lee County Justices v. Fulkerson,* 21 Grat., (Va.), 182.

Likewise, in Kentucky, where a bonding company was compelled to pay to certain wards a sum of money which had been lost through the failure of a bank, the court held that the company could not be subrogated to the rights of the guardian, since both the company and the bank were responsible for the loss as a result of an agreement for joint control of the fund. "A person who invokes the doctrine of subrogation," it was said in that case, "must come into court with clean hands, and it will not be applied to a tortious transaction at the instance of one liable as a tort-feasor." *Fidelity & Casualty Co. v. Farmers' & Merchants' Bank,* 223 Ky. 32, 2 S.W. 2nd 1048.

The attorneys for the appellants placed reliance upon the decision in *Leonard v. State Exchange Bank,* (C.C. A.), 236 Fed. 316, 321. But that was not a cause in equity, but an action at law. Moreover, the facts were quite different from those before us. In that case the officers of an Oklahoma bank signed a note to obtain a loan for the bank, without complying with an act of the

Legislature. The court declared there was nothing to "impeach the essential honesty of the transaction, so far as the parties directly interested were concerned."

The appellants also denied the statement of the chancellor that the directors of the bank were negligent in the management of its affairs and their negligence caused the infliction of the losses at the expense of the creditors. But regardless of whether the defalcation was due to their mismanagement, their efforts to obtain the lifetime savings of the Crouses by duress and by extending a hope of saving the son from imprisonment constitute a transaction of such a nature as to bar the appellants from invoking the doctrine of subrogation.

*Decree affirmed, with costs*