David B. STRATTON, Trustee for the
Estates of First American Mortgage
Company, Inc., etc. Plaintiff,

v.

Cleaveland D. MILLER, et al.
Defendants.

Civ. No. H–89–751.

United States District Court,
D. Maryland.

May 30, 1989.

Gregory A. Inskip and Potter, Anderson
& Corroon, Wilmington, Del., and Raymond
D. Burke, Baltimore, Md., for plaintiff.

Michael S. Sundermeyer and Williams & Connolly, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Chief Judge.

Before the Court is yet another of the many civil actions instituted in the United States Bankruptcy Court for the District of Maryland by the Trustee in Bankruptcy of First American Mortgage Company, Inc. (hereinafter "FAMCO"). By Order of this Court, reference of this case was withdrawn pursuant to 28 U.S.C. § 157(d).[1] Now pending before the Court in this case are defendants' motion to dismiss and motion for imposition of sanctions.

The claims and defenses in this case are similar to those presented in *Stratton v. Sacks*, 99 B.R. 686 (D.Md.1989) (hereinafter "the *Sacks* Opinion"). In that case, the Trustee sued Leonard Sacks and his accounting firm of Buxbaum, Sacks P.A. (hereinafter "B & S"), asserting claims of negligence and breach of contract. In this case, the Trustee has sued FAMCO's attorneys, namely Cleaveland D. Miller, Herman B. Rosenthal, Thomas B. Hudson and the law firm of Semmes, Bowen & Semmes (hereinafter "Semmes"). Three claims are presented by plaintiff Trustee. Count I of the complaint seeks a recovery under a theory of negligence; Count II alleges a breach of contract by defendants; and Count III alleges that defendants aided and abetted common law fraud.

Memoranda in support of and in opposition to the pending motions have been submitted by the parties and reviewed by the Court. Oral argument has been heard in open Court. For the reasons to be stated herein, defendants' motion to dismiss, treated herein as a motion for summary judgment, will be granted, and defendants' motion for sanctions will be denied.

# I

## Facts

In prior related litigation, this Court has recounted in considerable detail the pervasive fraudulent conduct of Michael H. Clott which ultimately led to the demise of FAMCO. *See E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.*, 678 F.Supp. 567 (D.Md.1988) (hereinafter "the *Equitable* Opinion"); *E.F. Hutton Mortgage Corp. v. Pappas*, 690 F.Supp. 1465 (D.Md.1988) (hereinafter "the *Pappas* Opinion"); the *Sacks* Opinion, *supra;* *Stratton v. Clott*, Civil No. H–88–779 1989 WL 123262 (Memorandum and Order of May 10, 1989); and *Zolfaghari v. Clott*, Civil No. H–87–2633, 1989 WL 90266 (Memorandum Opinion of May 22, 1989). Additional facts pertaining to defendants' relationship with FAMCO have been alleged by plaintiff in the complaint and are set forth herein.

On April 6, 1982, Clott retained Semmes to act as FAMCO's general business counsel. The firm advised FAMCO with respect to tax matters, the formation and operation of FAMCO's affiliates and subsidiaries, and the contemplated reorganization of FAMCO and its related entities. Semmes also represented FAMCO during 1985 in connection with the proposed purchase of FAMCO by Equitable Bank. Defendants Miller, Rosenthal and Hudson were the partners at Semmes primarily responsible for handling FAMCO matters.

As noted in the *Equitable, Pappas* and *Sacks* Opinions, Clott began perpetrating his fraudulent schemes soon after the original FAMCO was formed. Plaintiff alleges that defendants, during the course of their representation of FAMCO, became aware of fraudulent activity and irregularities which were occurring at FAMCO.

Plaintiff alleges that as early as March 30, 1984, defendants learned that brokerage fees from FAMCO operations in Illinois were being wrongly diverted to Financial Services Group, Inc. (hereinafter "FSG, Inc."). Although FSG, Inc. was in the busi-

---

**1.** Three other suits which were likewise instituted by the Trustee in the Bankruptcy Court as adversary proceedings were also withdrawn and have been or are still currently pending in this Court. *Stratton v. Sacks, et al.,* Civil No. H–88–614, *Stratton v. Clott, et al.,* Civil No. H–88–779 and *Stratton v. Equitable Bank,* Civil No. H–88–1485.

ness of marketing FAMCO loans, it allegedly took no part in the brokering of such loans in Illinois. Plaintiff further contends that defendants became aware in July or August of 1985 that some $4,000,000 of these fees had been further diverted and used for the personal benefit of Clott and Jerry Gaultney, FAMCO's President.[2]

During 1985, defendants were allegedly apprised of numerous other irregularities at FAMCO. In early January of 1985, Semmes was purportedly told by auditors of Ernst & Whinney that FAM Mortgage Servicing, Inc. (hereinafter "FAM Servicing"), which had been organized in 1984 for the purpose of servicing FAMCO originated loans, was unauditable because its records were in complete disarray. The auditors advised Semmes that the contemplated reorganization of FAMCO and its related entities should be delayed until after the close of the fiscal year on February 28, 1985. Soon thereafter, in July of 1985, Semmes allegedly also learned that Clott, contrary to advice from Semmes, was refusing to disclose to Equitable Bank information concerning loans originated by FAMCO's predecessor, MH Mortgage Company, Inc.

On or about July 24, 1985, defendants allegedly were informed of the results of a due diligence investigation conducted by Ernst & Whinney on behalf of Equitable Bank. The report revealed (1) that FAM Servicing had failed to remit an estimated $4,000,000 in loan prepayments to investors, thereby violating its service agreements; (2) that FAMCO had withheld rebates of origination points which it was required by the law of certain states to forward to borrowers; (3) that FAMCO was in violation of the surety bond issued by Rockwood Insurance Company to protect against borrower defaults; and (4) that approximately $4,000,000 had been channeled through First Coast Mortgage Company, FAMCO's Florida subsidiary, and diverted for the personal benefit of Clott and Gaultney without having been recorded in FAMCO's books.

Additional improprieties allegedly became known to Semmes in October of 1985. At that time, Semmes allegedly learned that FAMCO's Self Insured Retention Fund had insufficient funds to cover the amount of delinquent loans originated by FAMCO. Furthermore, Semmes also allegedly discovered that FAMCO may have been double selling loans.

Asserting that Semmes had a duty to take preventive measures and to disclose its knowledge of irregularities to FAMCO's Board of Directors, the Trustee seeks substantial damages from Semmes under theories of negligence, breach of contract and aiding and abetting fraud. Plaintiff maintains that, as a direct result of defendants' alleged misconduct, Clott was able to continue the implementation of his fraudulent schemes ultimately leading to the collapse of FAMCO.

## II

### *The Motion to Dismiss*

If it appears that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief, a motion to dismiss filed under Rule 12(b)(6), F.R.Civ.P. should be granted. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Pursuant to Rule 12(b)(6), if matters outside the complaint are presented to and not excluded by the Court, the motion is to be treated as one for summary judgment and disposed of as provided in Rule 56, F.R.Civ.P.

In this case, as in *Sacks*, the parties here have agreed that the issues are the same under both Count I and Count II. Plaintiff's breach of contract claim is based on the assertion that defendants negligently performed their contractual obligations as attorneys. Count I and Count II thus constitute no more than "a single form of wrongdoing under different names." *Cen-*

---

**2.** Clott is currently serving a sentence of 12½ years imprisonment on charges of criminal fraud and racketeering. Gaultney pled guilty to two counts of bank fraud in connection with his activities at FAMCO and was recently sentenced to a term of imprisonment of 2½ years. *United States v. Gaultney*, JH–88–071.

*co v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.1982).

The Court's decision in the recent *Sacks* Opinion is controlling here as to both Count I and Count II. In *Sacks,* this Court concluded that FAMCO's Trustee was barred from recovering damages from FAMCO's accountants by the doctrine of contributory negligence and that, in any event, the negligence of those defendants was not the proximate cause of the losses sustained by FAMCO. Similarly here, the plaintiff Trustee is barred by principles of contributory negligence from recovering damages from FAMCO's attorneys. Furthermore, for reasons more fully discussed in the *Sacks* Opinion, any negligence or wrongful conduct of the Semmes attorneys was not the proximate cause of the losses sustained by FAMCO.[3]

This case differs from *Sacks* in that the issues pertaining to the defenses of contributory negligence and absence of proximate causation have been raised by defendants in their motion to dismiss the complaint rather than, as in *Sacks*, in a motion for summary judgment. Nevertheless, the result is the same, particularly in view of the extensive findings and conclusions reached by this Court in other litigation involving FAMCO. Here, plaintiff Trustee has properly alleged claims of negligence, breach of contract and aiding and abetting fraud. However, plaintiff is not entitled to a recovery in this case because the allegations of the complaint themselves, when considered along with the allegations of plaintiff's complaint in *Stratton v. Clott, supra* and along with findings and conclusions of the Court in related litigation, establish as a matter of law that FAMCO itself was guilty of contributory negligence which directly contributed to the losses sustained. Furthermore, such allegations and other facts establish in any event that any negligence of the defendants here was not the proximate cause of FAMCO's losses.

## (a)
### Contributory Negligence

■ The complaint itself contains allegations detailing the fraud and negligence of FAMCO which bar recovery in this case from FAMCO's attorneys. In Paragraph 41 of the complaint, it is alleged, *inter alia,* that Clott perpetrated a major fraud, that Clott refused to disclose relevant information to Equitable Bank concerning bad loans, that FAMCO at Clott's direction failed to remit prepayments on mortgage loans to investors, that Clott had diverted $4,000,000 of FAMCO funds to MH Mortgage Company, Inc. and to First Coast Mortgage Company, that at Clott's direction, FAMCO failed to rebate to borrowers unearned points on mortgages, that FAMCO violated the terms of the surety bond issued by Rockwood Insurance Company, that certain directors of FAMCO were aware that the Self Insured Reserve Fund was insufficient to cover the amount of delinquencies and that brokerage fees were being improperly paid by FAMCO to FSG, Inc.

Not only did plaintiff thus acknowledge in his complaint in this case that Clott and other FAMCO employees were at least negligent, but plaintiff has also made similar allegations in the complaint he filed in this Court in *Stratton v. Clott, et al.,* Civil No. H–88–779. In that case, plaintiff Trustee charged virtually every director, stockholder and principal officer of FAMCO with gross negligence and breach of fiduciary duty in failing to investigate and stop the frauds being perpetrated by Clott. As the Court concluded in the *Sacks* Opinion, the Trustee's allegations in *Stratton v. Clott* may properly be considered by the Court in this case as corroboration of what the pleadings otherwise show, namely that the negligent acts and omissions of many officers and agents of FAMCO directly contributed to the losses which the Trustee seeks to recover in this case. (Slip op. at 19). In *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir.1982), the Fourth Cir-

---

**3.** In view of the Court's determination as to the issues of contributory negligence and proximate causation in this case, it is not necessary to consider the other arguments advanced by the defendants in support of their motion to dismiss.

cuit invoked the doctrine of judicial estoppel in concluding that a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in related litigation. *See also* 1B *Moore's Federal Practice*, Para. 0.405[8], at 239–42 (2d ed. 1988).

As this Court concluded in the *Sacks* Opinion, plaintiff Trustee stands in the shoes of FAMCO, and if FAMCO's contributory negligence directly contributed to the losses sustained, there can be no recovery against the defendants even though they, as FAMCO's attorneys, were allegedly guilty of malpractice.[4] Plaintiff has alleged that defendants aided and abetted the fraudulent conduct of FAMCO and that defendants were negligent in failing to prevent FAMCO from pursuing its own fraud. However, various courts have held that claims of legal malpractice are subject to dismissal if, as here, the client admittedly acquiesced in the alleged fraudulent scheme and benefited from the fraud in question. *See e.g., Robins v. Lasky*, 123 Ill.App.3d 194, 78 Ill.Dec. 655, 462 N.E.2d 774, 779 (1984); *Mettes v. Quinn*, 89 Ill. App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549, 551 (1980); *Evans v. Cameron*, 121 Wis.2d 421, 360 N.W.2d 25 (1985). There can be little doubt that FAMCO and its principal officers devised a wide-ranging scheme to defraud investors and others and that the corporation derived substantial economic benefit from the illegal activities undertaken. ·

█ In arguing that he is not barred in this case by the doctrine of contributory negligence, plaintiff Trustee objects to this Court's consideration of facts other than the allegations of the complaint. In particular, plaintiff contends that this Court should not consider facts established in other FAMCO-related litigation until full discovery has been permitted in this case. There is no merit to these arguments. Rule 12(b)(6) specifically permits the Court to consider matters outside the complaint and treat a motion to dismiss as if it were a motion for summary judgment. The Rule further provides that all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. In this particular case, defendants' motion clearly relied on pleadings in *Stratton v. Clott, supra,* and on findings made by this Court in prior related litigation. Had plaintiff wished to challenge any of these facts which were not included as allegations of his complaint, a timely request to conduct discovery should have been made. Instead, plaintiff waited until the hearing in this case before asking that further discovery be permitted. That request was properly denied.

This was not a case in which a motion to dismiss was filed before meaningful discovery was available. Plaintiff's complaint was filed in the Bankruptcy Court on January 22, 1988. By that date, extensive discovery had been undertaken both by the Trustee and by other parties in related litigation involving FAMCO and Clott. By the time that briefing on the pending motion had been completed, numerous exhibits, affidavits and depositions were not only available but had been filed in *Hutton, Pappas* and *Sacks,* as well as in other related litigation.[5] Moreover, the Trustee was also the plaintiff in the *Sacks* case and engaged in extensive discovery pertaining to the very same issues the resolution of which are controlling in this case. Resources of the bankruptcy estate and of defendants would be unnecessarily wasted if this Court were now to grant plaintiff's request to undertake further discovery. If additional discovery on issues before the

---

**4.** As the Court determined in the *Sacks* opinion, much more than the negligence of Clott and other FAMCO officers has been shown by the discovery undertaken to date in these cases. *See* the *Sacks* Opinion, 99 B.R. at 693, n. 7. As in *Sacks,* it is not necessary for the Court, in concluding here that FAMCO's contributory negligence bars any recovery from these defendants, to analyze the legal effect of the intentional tortious acts of Clott and other FAMCO officers.

**5.** Civil actions pending in this Court and arising out of Clott's fraudulent activities were listed in the *Hutton* Opinion. *See* 678 F.Supp. at 570, n. 1. That listing did not include the four civil actions, including this one, brought by the Trustee and litigated in this Court.

Court were to be now permitted and if the very full record before the Court in *Sacks*, even as supplemented by essentially duplicative discovery, were once again made a part of the record here, the result would undoubtedly be the same.

As shown by the allegations of the complaint and the findings made by this Court in *Sacks* and other FAMCO-related cases, substantial negligence and other fault on the part of defendants' client FAMCO has been established. Such a showing would allow a law firm like Semmes to avoid liability resulting from its own negligence. *Shapiro v. Glekel*, 380 F.Supp. 1053, 1058 (S.D.N.Y.1974). This Court accordingly concludes that as a matter of law FAMCO was itself negligent and that its own negligence was a contributing cause of the losses claimed by plaintiff in this case. Were this civil action to proceed to trial and were a jury to find that defendants were negligent in the legal work performed, plaintiff would not be entitled to recover damages because of FAMCO's own contributory negligence.

(b)

*Proximate Causation*

■ The *Sacks* Opinion is likewise controlling as to the issue of proximate causation in this case. Allegations of the complaint and findings of this Court in other FAMCO-related cases establish that any negligence of the defendants here was not the proximate cause of the losses alleged. Losses sustained by FAMCO as a result of Clott's diversions or otherwise were caused essentially by Clott's fraudulent conduct and by the negligence of other officers and agents of FAMCO. This Court finds and concludes, as it did in *Sacks*, that no tortious act of defendants caused or contributed to the losses claimed by plaintiff in this suit.

As was argued in *Sacks*, plaintiff contends that these defendants knew of Clott's fraud and other tortious conduct and had a duty to apprise FAMCO's stockholders and directors of these irregularities. However, it is mere speculation to suggest that the diversions which caused the losses sustained would have been prevented if FAM-

CO's attorneys had advised other directors of Clott's misconduct. As noted in the *Sacks* Opinion, Clott was undertaking the other fraudulent and criminal activities which kept FAMCO in business at the same time that he was transferring corporate funds to MH Mortgage and eventually into his own pockets. *See* the *Sacks* Opinion, 99 B.R. at 696. Plaintiff has not in this case been able to point to facts in the record which show that there is a reasonable probability or a reasonable certainty that the acts complained of caused the losses suffered. *See Lustine Chevrolet v. Cadeaux*, 19 Md.App. 30, 36, 308 A.2d 747 (1973).

For these reasons, this Court concludes that the damages claimed by plaintiff Trustee in this case were not proximately caused by the tortious acts of defendants. The allegations of the complaint and findings made by the Court in other FAMCO-related cases establish that any negligence on the part of defendants did not directly cause or contribute to the losses claimed by the plaintiff.

(c)

*Aiding and Abetting Fraud*

■ In Count III, plaintiff alleges that defendants aided and abetted FAMCO in its scheme to defraud. Relying on *Etgen v. Washington County Building & Loan Ass'n*, 184 Md. 412, 41 A.2d 290 (1945), defendants contend that Maryland law does not recognize such a tort. This Court would agree.

A similar claim was advanced by the plaintiff in the *Hutton* case in which that plaintiff relied on *Martin v. Pepsi Cola Bottling Co.*, 639 F.Supp. 931, 934 (D.Md. 1986). In *Hutton*, this Court found it unnecessary to determine whether *Martin* applied to claims based on common law fraud as well as to claims based on securities fraud. *See* 678 F.Supp. at 580–81. The claim was rejected in the *Hutton* case because the record there contained no evidence that the defendant acted with a conscious intention to facilitate or advance FAMCO's scheme to defraud. *Id.* Similarly, in the *Pappas* case, the Court found that it was not necessary to decide whether

or not Maryland recognizes the tort of aiding and abetting common law fraud. *See* 690 F.Supp. at 1472.

■ In this case, the claim is challenged as a matter of law. Analysis of the *Etgen* case indicates that Maryland law requires that a defendant must willfully aid in execution of a fraudulent scheme to be held liable as a participant in a fraud. *See* 184 Md. at 418, 41 A.2d 290. However, the complaint here does not allege that defendants willfully and intentionally participated in the fraudulent acts of Clott and other officers of FAMCO. Plaintiff here has done no more than allege that defendants knew of the fraudulent conduct, that they failed to inform other officers and directors of such conduct and that they thereby aided and countenanced the commission of the fraud and other torts perpetrated by Clott. It is further alleged that Semmes' conduct was a material and substantial assistance to the fraud perpetrated by Clott against FAMCO's investors. These allegations are insufficient under Maryland law. Missing are allegations of willful participation by defendants in FAMCO's fraudulent conduct. This Court will not undertake to create in this State a new tort of aiding and abetting common law fraud based on elements which the Court of Appeals of Maryland have not recognized. *See Cenco, Inc. v. Seidman & Seidman, supra* at 453.

Accordingly, Count III of the complaint must be dismissed because it does not state a cause of action recognizable by the common law of Maryland.

### III

### *The Motion for Sanctions*

■ Relying on Bankruptcy Rule 9011 and Rule 11, F.R.Civ.P., defendants have filed a motion for imposition of sanctions against plaintiff and his counsel.[6] Pursuant to Bankruptcy Rule 9011, counsel's signature on a complaint constitutes a certificate that after reasonable inquiry, the complaint is well grounded in fact, warranted by existing law and not interposed for any

improper purpose. From its review of the record here, this Court concludes that plaintiff and his counsel have not violated Bankruptcy Rule 9011 or Rule 11. The motion for sanctions will accordingly be denied.

Defendants argue that after the *Hutton* Opinion was filed, the Trustee and his attorneys should have known that their complaint was not well grounded in fact. However, it was not the *Hutton* Opinion which conclusively established the lack of merit of plaintiff's claims against these defendants. Rather, it was not until the *Sacks* Opinion was filed on May 2, 1989 that it became abundantly clear that plaintiffs could not succeed in their attempt to hold Semmes and its attorneys responsible for FAMCO's losses. The *Hutton* case did not involve the Trustee as a litigant. On the other hand, the *Sacks* case was instituted by the Trustee and presented claims against FAMCO's accountants similar to those asserted here against FAMCO's attorneys.

The question before the Court is whether, under Bankruptcy Rule 9011 and Rule 11, a reasonable pre-filing inquiry was made by counsel for plaintiff. *See Wagner v. Allied Chemical Corp.*, 623 F.Supp. 1407, 1411–12 (D.Md.1985). As the Fourth Circuit has indicated, Rule 11 is designed to punish and deter the filing of pleadings that a reasonable attorney would recognize as frivolous. *Forest Creek Assoc. v. McLean Sav. & Loan Ass'n.*, 831 F.2d 1238, 1245 (4th Cir.1987). A standard of objective reasonableness should be applied. *NCNB National Bank v. Tiller*, 814 F.2d 931, 941 (4th Cir.1987).

On the record here, this Court cannot conclude that it was unreasonable for plaintiff and his attorneys to believe that the allegations of the complaint were well grounded in fact. When the complaint was initially filed in the Bankruptcy Court on January 22, 1988, none of the Court's opinions in FAMCO-related litigation had been issued. Until all the discovery in these many cases had been completed, and until

---

6. Bankruptcy Rule 9011 is virtually identical to Rule 11.

the facts had been carefully sifted and argued in an adversary setting, it could not be finally determined that the Trustee was barred from recovering damages from these defendants by the doctrine of contributory negligence and that FAMCO's losses had not been proximately caused by defendants' negligence. As the Court noted in the *Pappas* Opinion, the facts in FAMCO-related cases were complex and were further complicated by Clott's fraudulent conduct. *See* 690 F.Supp. at 1478.

For these reasons, the Court cannot conclude on this record that it was unreasonable for the Trustee to sue defendants in this case. Accordingly, defendants' motion for imposition of sanctions will be denied.

IV

*Conclusion*

For the reasons stated, defendants' motion to dismiss, treated herein as a motion for summary judgment pursuant to Rule 12(b)(6), F.R.Civ.P., will be granted as to all counts of the complaint. Defendants' motion for imposition of sanctions will be denied. Judgment will accordingly be entered in favor of defendants, with costs. An appropriate Order will be entered by the Court.